An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-882

NORTH CAROLINA COURT OF APPEALS

Filed: 18 March 2014


MEHERRIN INDIAN TRIBE, DOROTHY
LEE, JONATHAN CAUDILL, MARGO
HOWARD, ABBY REID, THERESA
LANGSTON, WAYNE MELTON, WAYNE
BROWN, and KELLY BROWN,
    Plaintiffs,

    v.                                        Hertford County
                                            No. 08 CVS 159

THOMAS LEWIS, DIANE BRYD, AARON
WINSTON, TERRY HALL, PATRICK
RIDDICK, JANET L. CHAVIS, DENYCE
HALL, DOROTHY MELTON, and BEVERLY
MELTON,
    Defendants,

DEVONNA MOUNTAIN, DOUGLAS
PATTERSON, AUGUSTUS CHAVIS, JR.,
MARCUS ROBBINS,
    Moving or Intervening
    Parties.


Appeal by plaintiffs from orders entered 1 October and 8 November 2012 by Judge Gary E. Trawick in Hertford County Superior Court. Heard in the Court of Appeals 8 January 2014.


    *Barry Nakell for plaintiff-appellants.*

    *Ragsdale Leggett, PLLC, by William W. Pollock, for defendant-appellees Janet Chavis, Aaron Winston, Thomas Lewis, Terry Hall, and Denyce Hall.*

*Hudson Law Office, by Bonnor E. Hudson, III, for defendant-appellee Patrick Riddick.*

*No brief was submitted for defendants Diane Byrd, Dorothy Melton, and Beverly Melton.*

*No brief was submitted for moving or intervening parties Devonna Mountain, Douglas Patterson, Augustus Chavis, Jr., and Marcus Robbins.*

BRYANT, Judge.

Where the trial court's 19 April 2012 consent order is not ambiguous and plaintiffs fail to present any specific provision of the Consent Order that defendants violated, we affirm the trial court's orders denying plaintiffs' request for relief presented as a motion to enforce the Consent Order and a motion for reconsideration.

Pursuant to North Carolina General Statutes, section 71A-7.1,

> [t]he Indians now residing in small communities in Hertford, Bertie, Gates, and Northampton Counties, who in 1726 were granted reservational lands at the mouth of the Meherrin River in the vicinity of present-day Parker's Ferry near Winton in Hertford County, and who are of the same linguistic stock as the Cherokee, Tuscarora, and other tribes of the Iroquois Confederacy of New York and Canada, shall, from and after July 20, 1971, be designated and officially recognized as the Meherrin Tribe of North Carolina . . . .

N.C. Gen. Stat. ' 71A-7.1 (2013).

On 23 September 2010, in Hertford County Superior Court, plaintiffs Meherrin Indian Tribe, Dorothy Lee, Jonathan Caudill, Margo Howard, Abby Reid, Theresa Langston, Wayne Melton, Wayne Brown, and Kelly Brown filed a second amended complaint against defendants Thomas Lewis, Ernest Poole, Diane Byrd, Aaron Winston, Terry Hall, Patrick Riddick, Janet L. Chavis, Denyce Hall, Dorothy Melton, and Beverly Melton. Plaintiffs described the action as part declaratory judgment action, part action to compel the return of property, and part action to quiet title.

In the complaint, plaintiffs related that prior to 10 November 2007, defendant Thomas Lewis was chief of the Meherrin Indian Tribe. Following a general body meeting on that date, Thomas Lewis was removed as chief. On 12 January and 8 March 2008, following general body meetings, defendants Ernest Poole, Aaron Winston, Terry Hall, Patrick Riddick, and Janet L. Chavis were removed as officers on the tribal council, and defendant Diane Byrd was removed from the office of Secretary of the General Body. Plaintiffs contended that plaintiff Wayne Brown was elected Chief of the Meherrin Indian Tribe and that plaintiffs Dorothy Lee, Jonathan Caudill, Margo Howard, Abby

Reid, Theresa Langston, and Wayne Melton were elected to the Meherrin Tribal Council.

Plaintiffs sought a declaratory judgment stating that the removal from office of Thomas Lewis as Chief of the Meherrin Indian Tribe, of the other defendants as tribal council officers, and Diane Byrd, as Secretary of the General Body, was proper. Plaintiffs also requested an injunction to compel defendants to deliver all real and personal property belonging to the Meherrin Indian Tribe to plaintiffs. Plaintiff's action to quiet title regarded a warranty deed purporting to transfer title to real property owned by the Meherrin Indian Tribe. Plaintiffs also claimed that defendants' engaged in unfair and deceptive trade practices having fraudulently continued to hold themselves out as officers of the Meherrin Indian Tribe and engaged in commerce under the name of the Meherrin Indian Tribe.

Defendants denied plaintiffs' claims and counterclaimed on grounds of nuisance and misrepresentation. Defendants also moved for attorney fees and court costs. Further, defendants moved for an injunction against plaintiffs to cease holding themselves out as the governing body of the Meherrin Indian Tribe.

This matter, designated an exceptional civil case, was heard by the Honorable Judge Gary E. Trawick during the Civil Session of Hertford County Superior Court beginning 16 April 2012. On 19 April 2012, pursuant to an agreement between plaintiffs and defendants, the trial court entered a consent order detailing the procedure to be followed in conducting an election for the office of Meherrin Indian Tribe Tribal Chief and four tribal council members. The election was to take place on 26 May 2012. Based on the consent order "[a]ll claims and counterclaims pending before the Court in the above captioned matter [were] . . . dismissed with prejudice[.]"

On 17 July 2012, plaintiffs filed a motion to enforce the Consent Order. Plaintiffs asserted that pursuant to the 26 May 2012 election for officers of the Meherrin Indian Tribe, plaintiff Wayne Brown was tribal chief and plaintiffs Wayne Melton, Margo Howard, and Theresa Langston, along with Jermone James were elected to the tribal council. Plaintiffs further asserted that defendants violated the 19 April 2012 consent order by failing to return tribal property, forming a group named the "Meherrin-Chowanoke Nation," and representing that this group was the same as the Meherrin Indian Tribe recognized by our General Statutes.

In response, defendants Patrick Riddick, Terry Hall, and Denyce Hall filed motions for sanctions, arguing that the allegations made in plaintiffs' motion to enforce the Consent Order were unsupported, the relief sought went beyond the scope of the Consent Order, and that these defendants had incurred substantial expenses in responding to plaintiffs' motion.

With the consent of the parties and pursuant to Rule 2.1(e) of the General Rules of Practice, the matter was heard before Judge Trawick in New Hanover County Superior Court, with Hertford County Superior Court retaining subject matter jurisdiction. The matter came on for hearing on 6 September 2012.

On 1 October 2012, the trial court entered an order in Hertford County Superior Court in which it concluded that "[t]he officers of the Meherrin Indian Tribe of North Carolina are those who were elected on May 26, 2012," that there was insufficient evidence to determine whether any party had removed property from tribal grounds, and that subgroups may form within the tribe over which the trial court has no control. All motions for sanctions were denied.

On 12 October 2012, plaintiffs filed a motion for reconsideration pursuant to Civil Procedure Rule 59 and Rule 60.

On 8 November 2012, the trial court denied the motion. Plaintiffs appeal from the 1 October and 8 November 2012 orders.

_____

On appeal, plaintiffs raise the following issues: whether the trial court erred in (I) failing to identify the officers of the Meherrin Indian Tribe; (II) concluding that the consent order had not been violated; (III) characterizing defendants as a subgroup of the Meherrin Indian Tribe; and (IV) refusing to allow plaintiffs an evidentiary hearing.

*I*

Plaintiffs argue that the trial court committed reversible error in failing to identify by name the elected officers of the Meherrin Indian Tribe in the trial court's 1 October 2012 order. Specifically, plaintiffs contend the trial court's 1 October 2012 order is ambiguous, referring to the elected officers of the Meherrin Indian Tribe only as "those who were elected on May 26, 2012." We disagree.

"Where a judgment is ambiguous, and thus susceptible to two or more interpretations, our courts should adopt the interpretation that is in harmony with the law applicable to the case." *Blevins v. Welch*, 137 N.C. App. 98, 102, 527 S.E.2d 667,

670 (2000) (citing *Alexander v. Brown*, 236 N.C. 212, 215, 72 S.E.2d 522, 524 (1952)).

In their brief to this Court, plaintiffs acknowledge that "[a]ll parties agreed that the officers elected at the 26 May 2012 election were: Chief Wayne Brown was re-elected as Chief, Wayne Melton and Margo Howard were re-elected to seats on the Tribal Council, and Jerome James and Theresa Langston were elected to the Tribal Council." Plaintiffs further acknowledge that "the [19 April 2012] Consent Order itself specified that the following three members of the Tribal Council would continue to serve on the Council for one year to complete their terms: Dorothy Lee Livingston, Jonathan Caudill, and Fred Hedgpeth."

> [Plaintiffs argue that] [t]he identities of the winners of the election and the continuing Council members were clear and undisputed. However, anybody reading the order would not be able to determine the identities of the officers. It would be necessary to review the Motion in the Cause and responses or the transcript of the September 6 hearing to confirm those names.
>
> . . . Plaintiffs should be able to show interested parties the 1 October 2012 Order – one document . . . .

Following the 16 April 2012 hearing, Judge Trawick entered a consent order on 19 April 2012. By consent of the parties,

the court entered the 19 April 2012 order, directing the following:

> 1.  Plaintiffs and Defendants will conduct an election of the Meherrin Indian Tribe for the offices of Tribal Chief and four (4) tribal council members on May 26, 2012 . . . .
>
> . . .
>
> 3.  The following three (3) tribal council members will complete their existing terms due to expire in one year: Dorothy Lee Livingston, Jonathan Caudill, and Fred Hedgpeth[.]

In their 17 July 2012 motion for enforcement of the consent order, plaintiffs asserted that "[t]he results of the [26 May 2012] election were that Plaintiff Wayne Brown was re-elected Chief, Wayne Melton and Margo Howard were re-elected to seats on the Tribal Council, and Jermone James and Theresa Langston were elected to the Tribal Council."  The record before us, including the responses to plaintiffs' 17 July 2012 motion by defendants Patrick Riddick, Terry Hall, and Denyce Hall, does not reflect any challenge to the results of the 26 May 2012 election.

The trial court's 1 October 2012 order concluded that "[t]he officers of the Meherrin Tribe of North Carolina are those who were elected on May 26, 2012 pursuant to the Consent

Order entered in this matter on April 19, 2012." We do not view this portion of the trial court's order as ambiguous.

Plaintiff's arguments stem from a desire to have the names of the officers of the Meherrin Indian Tribe of North Carolina elected on 26 May 2012 stated in one court order; however, plaintiffs provide no authority compelling such. Accordingly, we must overrule plaintiff's argument.

*II*

Next, plaintiffs argue that the trial court erred in concluding there was insufficient evidence to show any party had violated the Consent Order. Specifically, plaintiffs contend that defendants violated the Consent Order by failing to participate in the election committee meetings, failing to participate in the election, and failing to abide by the election results. We disagree.

We first note that plaintiffs fail to direct us to any specific provision in the consent order that has been violated. The Consent Order directed plaintiffs and defendants to conduct an election for the offices of Tribal Chief and four tribal council members on 26 May 2012. The election committee was to consist of three representatives selected by plaintiff's group and two representatives selected by defendant's group. The

election committee was to administer the election, including providing an election website, providing notice about the election, nominations for offices, and facilities for absentee ballots. The election was to be conducted using a provisional ballot system. The election committee was to determine if each voter was a member of the Meherrin Indian Tribe. The consent order further detailed that no unusual use of tribal property was to occur until the election committee determined the election results, and that tribal funds would be expended only for ordinary operating expenses.

While plaintiffs argue that defendants participated in only a few election committee meetings rather than all and that defendants held themselves out as leaders of a tribe with a name very similar to that of the Meherrin Indian Tribe, plaintiffs nevertheless fail to allege how this amounts to a violation of the Consent Order. Plaintiffs' challenge is overruled.

*III*

Plaintiffs argue that the trial court erred in characterizing defendants' group as a subgroup of the Meherrin Indian Tribe. Specifically, plaintiffs contend that defendants who are associated with the group known as the Meherrin-

Chowanoke Tribe are holding themselves out as the Meherrin Indian Tribe in violation of the consent order. We disagree.

Plaintiffs cite no provision of the 19 April 2012 consent order that precludes any party to the consent order from using the name "Meherrin-Chowanoke" or advocating on behalf of a group referred to as the Meherrin-Chowanoke Indian Tribe. Accordingly, we overrule plaintiffs' argument.

*IV*

Plaintiffs argue that the trial court erred in failing to grant them an evidentiary hearing on the issue of whether defendants removed tribal property.

> [Specifically, plaintiffs contend that] [d]efendants received hundreds of thousands of dollars of federal ANA grants to perform research to support an application for federal recognition. No documents from that research were in the Tribal Headquarters when Plaintiffs took possession of it and no documents from that research have ever been turned over to Plaintiffs.
>
> . . .
>
> Pursuant to the Consent Order, Defendants were required to produce them to the newly elected Chief . . . .

We disagree.

Plaintiffs point to no provision of the 19 April 2012 consent order that compels defendants to turn over property

acquired as a result of defendants' application for federal recognition, and we find none. We note that in plaintiff's second amended complaint, plaintiffs moved for an order compelling defendants to deliver to plaintiffs all books, records, materials, funds, keys, material relating to the control of the Meherrin Indian Tribe web site, and any real and personal property in defendants' possession or control belonging to the Meherrin Indian Tribe. However, upon entry of the consent order "[a]ll claims and counterclaims pending before the Court in the []matter [were] . . . dismissed with prejudice." Accordingly, we overrule plaintiffs' argument.

Affirmed.

Judges CALABRIA and GEER concur.

Report per Rule 30(e).